UNITED STATES DISTRICT COURT
EASTERN DISTRICT STATE OF LOUISIANA

| | |
|---|---|
| **LATOYA MORGAN** | **CIVIL ACTION NO: 2:21-cv-00172** |
| v. | **SECTION:** Hon. Susie Morgan (E-2) |
| **LCMC HEALTH** | **MAGISTRATE:** Donna P. Currault |

## FIRST AMENDING AND SUPERSEDING COMPLAINT

**NOW INTO COURT**, through undersigned counsel comes the Plaintiff, LaToya Morgan who files her First Amending and Superseding Complaint against LCMC Health and ABC INSURANCE stating that the following causes of action are based upon the Defendant's violations of Federal Law, via Title VII of the CivilRights Act, as amended and also for violations of the Louisiana Employment DiscriminationLaw as follows:

### I. PARTIES

**1.**

Latoya Morgan ("Morgan") is a citizen of the State of Louisiana and of the United States and resides within the Eastern District of Louisiana.

**2.**

The Defendant, LCMC Health is a New Orleans based non-profit health system authorized to do and doing business within the confines of the Eastern District of Louisiana.

**3.**

ABC Insurance, LCMC Health's unidentified liability insurer authorized to do business in the State of Louisiana.

## II. **JURISDICTION AND VENUE**

**4.**

Morgan asserts that jurisdiction is proper in this Honorable Court pursuant to the provisions of 28 USC § 1331 as she received her "Right to Sue" from the Equal Employment Opportunity Commission on October 29, 2020 (Exhibit 1) and this complaint was has been filed within 90 days of that date. Morgan also asserts claims for violations of the LouisianaEmployment Discrimination law pursuant to this Honorable Court's supplemental jurisdiction.

**5.**

Venue is proper in this Honorable Court pursuant to 28 USC § 1391(a).

## III. **FACTS AND ALLEGATIONS**

**6.**

Morgan is an African American female, who worked as a Senior Systems Analyst at LCMC Health (LCMC) for approximately two (2) years.

**7.**

In February 2017 Morgan started work at LCMC. One year later, she was promoted to her last position.

**8.**

Months later, beginning in July 2017, Morgan was subjected to several acts of disparate treatment and harassment because of her race, disability, and in retaliation for complaining about disparate treatment.

**9.**

The first incident was occurred in July 2017 when an employee, Karen Choppin, who is white began waving her arms erratically during a staff meeting wherein she almost hit Morgan, who felt threatened. Without cause and in complete disregard of the situation and company policy, another employee, and Manager Tonya Miller Johnson,[1] opined that Morgan should have "acted like a distressed white girl," in response to the Morgan's apprehension of almost beinghit.

**10.**

Ms. Miller-Johnson, who is a supervisor, made the inappropriate comment in front of other coworkers from a position of authority and confident that she would be insulated from any corrective reprisals for the comment.  Morgan consistently asked Miller-Johnson not to make those type comments.

**11.**

Miller-Johnson routinely engaged in sharing private information with Morgan and others about other employees to deliberately create chaos in the workplace, thereby fostering a toxic work environment.

**12.**

In May of 2019, Morgan was given a *negative* employee evaluation by Miller-Johnson that was *not* based on work performance, but rather was based co-workers' opinions of Morgan.

---

[1] Tonya Miller Johnson is black.

**13.**

Thereafter, Miller-Johnson directed another employee, a white male, Justin Smith, to stop assisting Morgan with assignments. She also notified Morgan that "the culture was about to change." Which caused Morgan distress and anxiety.

**14.**

Justin Smith would often make inappropriate and comments implying that Morgan was prone to violent or unexpected behavior by starting conversations with phrases such as, "Latoya, I have a question but don't shoot me," or "Hey Latoya, I have a question but don't stab me." This behavior continued through July 2019.

**15.**

Tanya Miller-Johnson also engaged in making matters even worse by stating in team meetings that she was scared of Morgan. Morgan asked her to stop making the statement. Miller- Johnson's comments and behavior caused other employees to have fear and animus against Morgan.

**16.**

Because of Miller-Johnson's authority and position, her negative comments in staff meetings not only publicly maligned Morgan, they were shared in violation of laws prohibiting the sharing of medical diagnoses, and also implied that Morgan's anxiety and depression made her violent and unpredictable.

**17.**

On the last occasion, after just attending a staff meeting Morgan heard Candace Arzia, who is white, and Miller-Johnson almost jokingly referring to her after she left the room. Morgan re-entered the room she had just exited to defend herself. Miller-Johnson yelled for Morgan to leave.

**18.**

Following the incident, Morgan went to Human Resources and met with Terri Taylor Joseph (H.R.) to report the incident. Although Ms. Joseph met with Morgan repeatedly, she told Morgan that she did not know how to help her.

**19.**

Subsequently, Morgan was called to the office and accused of making a statement by other employees who accused her of saying she was "going postal" and "slapping someone," which did not happen. Morgan was then sent home pending an investigation.

**20.**

August 1, 2019, while Morgan was informed by Miller-Johnson that they could not substantiate the statement, she was summarily discharged, without any warning pursuant to the employee handbook, because my behavior *did not align with the behavior standard of LCMC*.

21.

Morgan was not allowed to submit any statement regarding the investigation, but she was told to mail it in. It remains unknown whether the statement was considered in the decision.

22.

Additionally, while Morgan was terminated based on the aforementioned *alleged* "going postal" statement, two (2) white employees actually made comments related to workplace violence without immediate termination: particularly Timberly Jones (w), and Candace Ariza (w)—who was the other person in the conference room who engaged in denigrating Morgan after a staff meeting.

23.

Timerly Jones also on several occasions stated that she would "go postal" on the business office during an occasion when she became frustrated working on a project. Candace Ariza stated that she "wanted to just stab Justin in the face" and she often made other derogatory comments regarding unsatisfactory results from emails or meetings. These incidents were never addressed.

24.

Additionally, other persons engaged in inappropriate behavior. Particularly, Justin Smith was supposed to be written up for his behavior of making inappropriate comments to Morgan, but he continued. In fact he was promoted and was allowed to stay on until he resigned.

25.

Karen Choppin, the woman who almost hit Morgan, was also promoted and no action was taken

for her outbust.

**26.**

Sherri Walters also exhibited bad behavior in the workplace, but she was not reprimanded. She was said to be too valuable to let go despite her unprofessional and derogatory email to the following employees.

**27.**

Most employees were aware that Morgan suffered from anxiety and that she took medication for her condition, including: Brittany Daley, Epic AM. J. Candace Ariza, Tanya Johnson and David Singer (Assistant V.P.) and Kalan Blair.

**28.**

While Miller-Johnson made excuses for Sherry Walters behavior due to her "medicine changes," she would not give Morgan the same consideration her for depression and anxiety.

**29.**

As a direct consequence treating her differently, Morgan was subjected to workplace discrimination, and her supervisors (1) played upon her disability (2) Miller-Johnson falsely and publicly expressed fear and concern because of her knowledge that Morgan had anxiety issues; (3) Miller-Johnson created a hostile work environment through peer reviews that not based on work performance the became part of Morgan's permanent work file.

**30.**

The above incident and acts of discrimination and retaliation are all a violation of the Louisiana Employment Discrimination Law ("LEDL").

**31.**

As a direct consequence of this incident Morgan suffered intentional inflection of emotional distress, severe chronic headaches as a result of the workplace discrimination described above.

## **COUNT ONE**

**32.**

LCMC'S conduct, as described herein, violates Title VII of the Civil Rights Act and also the Louisiana Employment Discrimination Law as the employment discrimination, harassment and/or retaliation, and as such LCMC is liable unto Plaintiff for:

A. Back pay including benefits;

B. Front pay including benefits;

C. Mental anguish;

D. Humiliation/embarrassment;

E. Loss of enjoyment of life;

F. Punitive damages;

G. Prejudgment interest;

H. Attorneys fees;

    I. Cost of these proceedings.

## COUNT TWO

**33.**

The Defendant's conduct mentioned above also constitutes intentional or negligent infliction of emotional damage because LCMC knew or should have known that the cumulative effect of its actions and/or omission described herein was substantially certain to cause emotional distress to Morgan and is actionable under Louisiana Law such that LCMC is liable unto Morgan for:

    A. Mental anguish and depression;

    B. Humiliation/embarrassment;

    C. Loss of enjoyment of life;

    D. Medical expenses;

    E. Prejudgment interest;

    F. Attorneys fees;

    G. Cost of these proceedings.

## JURY DEMAND

Plaintiff requests a trial by Jury.

**WHEREFORE** the Plaintiff, Latoya Morgan prays that the Defendant, LCMC Health, a be duly cited to appear and answer the Complaint and after due proceedings and legal delays are had, that there be judgment in favor of your Plaintiff, and against the Defendant, as detailed in the foregoing Complaint in an amount reasonable in the premises, together with legal interest from date of judicial demand, all costs of these proceedings, reasonable attorneys fees, punitive

damages and all other general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

/s/ Veleka Eskinde
**Veleka Eskinde** (#28305)
VAST LAW GROUP, LLC
2916 Gen, DeGaulle Drive, Suite 103
New Orleans, LA 70114
Telephone (504) 618-8743
Facsimile (877) 769-7826

*Attorney for Latoya Morgan*

**SERVICE BY SUMMONS:**

**LCMC HEALTH**